JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Debra Skipper ("defendant") appeals from the judgment of the trial court which, following a jury trial, found her guilty of felonious assault. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} Defendant was indicted on October 21, 2002 on one count of felonious assault in violation of R.C. 2903.11, a second degree felony. The defendant pleaded not guilty to the charge and the matter proceeded to a jury trial on August 19, 2002.
 {¶ 3} At trial, the state presented testimony of Fred Lutz, the victim in this case. He testified that on October 21, 2001, he walked home from the store and was approaching his house at approximately 5:40 p.m. He stated that the defendant, who lived two houses away, pulled out of her driveway and blocked the sidewalk so that the victim could not walk toward his house. He stated that he motioned for her to pull out, since there was no traffic. Mr. Lutz stated that the defendant just looked at him, and as he tried to walk to the front of the car to walk around it, she accelerated. Mr. Lutz stated that he jumped back and then attempted to walk behind the car, at which time the defendant reversed her car. He testified that this went on six or seven times and that the defendant was trying to run him over. Eventually, the defendant ran over the victim's foot and left the car on top of his foot until he pounded on her windshield a few times. The victim testified that at the time the car was on his foot, he was lucky that his foot was on soft terrain and that he did not suffer from anything more than contusions to his foot. Mr. Lutz further testified that he believed the defendant had been waiting for him to return from the store and purposely got into her car to taunt him when she saw him on his way home.
 {¶ 4} The state also presented the testimony of the defendant's next door neighbor, Carol Joachim, who testified that she heard commotion outside of her house on October 21. She stated that when she went outside to see what happened, she was told that the defendant had run over Mr. Lutz's foot. She testified, however that she did not actually witness the events.
 {¶ 5} Mr. Lutz's wife testified that she was inside her house when she saw the defendant "teasing" her husband with her car and that she witnessed the defendant run her car over his foot.
 {¶ 6} Lastly, the state presented the testimony of Officer Dymphna O'Neill, who testified that she responded to the call on October 21, 2001. She stated that when she arrived, Mr. Lutz was complaining that his foot was injured. The officer noticed a tire mark on the grass by the fence and the sidewalk, where Mr. Lutz had alleged that the defendant ran him over. The officer also observed that the defendant's car was warm and had been driven recently. The officer approached the defendant's house to find out about the alleged events, at which point the defendant started screaming obscenities and refused to come out of her house. The defendant finally came out of the house and tried to get in her car and drive away. The defendant shoved the officer and her partner out of the way, at which point the officers restrained her. Because of the defendant's violent nature and larger size, the officers restrained the defendant until back-up officers arrived. After an extended confrontation with the neighbors and the victim, the police officers arrested the defendant for felonious assault.
 {¶ 7} The defendant testified that Mr. Lutz was walking home as she was leaving her driveway. She stated that she stopped to let him walk past her house, but when she stopped, he stopped. She said she started to leave, at which point Mr. Lutz started walking, so she stopped again. She stated that she was frustrated with Mr. Lutz "playing games" with her in her driveway, so she went back in her house to make a phone call about the situation. She said that when she went back downstairs, she found the police investigating the scene.
 {¶ 8} Thereafter, the jury found the defendant guilty of felonious assault as charged in the indictment. It is from this judgment that the defendant now appeals, asserting two assignments of error for our review.
 {¶ 9} "I. Debra Skipper was denied her constitutional right to a fair trial before a jury and her constitutional right to due process, when the trial court improperly gave the state an extra peremptory jury challenge."
 {¶ 10} The defendant contends that the state effectively waived any remaining peremptory challenge when it waived its third peremptory challenge and tacitly acknowledged its satisfaction with the composition of the jury at that time. The defendant further maintains that the trial court improperly granted the state a fifth peremptory challenge. We disagree with the defendant.
 {¶ 11} In this case, the prosecutor and defense counsel exercised their first two peremptory challenges without incident. The state then waived its third peremptory challenge, after which the defense exercised its third peremptory challenge. The trial court then mistakenly concluded "we have a jury." (T. 89) The record reveals the following:
 {¶ 12} "The Court: I think we have a jury.
 {¶ 13} "[Defense counsel]: I think there's one more peremptory. (sic).
 {¶ 14} "The Court: I don't think so.
 {¶ 15} "[The prosecutor]: I passed mine last.
 {¶ 16} "The Court: So you have had your three. Each side gets three.
 {¶ 17} "[Defense counsel]: I think it's four, Your Honor.
 {¶ 18} "The Court: Okay, all right.
 {¶ 19} "[Defense counsel]: On the other hand, the rules of —
 {¶ 20} "The Court: Go ahead." (T.89-90)
 {¶ 21} Defense counsel then exercised its fourth peremptory challenge out of turn. Thereafter, the state exercised its final peremptory challenge. Neither party objected to defense counsel exercising his final peremptory challenge out of order; however, defense counsel did challenge the trial court's decision to allow the state its final peremptory challenge, characterizing it as an "extra" challenge.
 {¶ 22} We note initially that with regard to the order in which the final peremptory challenges were exercised, the defense failed to object. Therefore, the defendant waived any such error on appeal regarding the court's procedure in overseeing the exercise of the parties' peremptory challenges. State v. Greer (1988), 39 Ohio St.3d 236. In fact, the defense arguably precipitated the error by exercising its final challenge before the state had an opportunity to exercise its final challenge.
 {¶ 23} Crim.R. 24(D) provides:
 {¶ 24} "Peremptory challenges may be exercised after the minimum number of jurors allowed by the rules has been passed for cause and seated on the panel. Peremptory challenges shall be exercised alternately, with the first challenge exercised by the state. The failure of a party to exercise a peremptory challenge constitutes a waiver ofthat challenge. If all parties, alternately and in sequence, fail to exercise a peremptory challenge, the joint failure constitutes a waiver of all peremptory challenges.
 {¶ 25} "A prospective juror peremptorily challenged by either party shall be excused and another juror shall be called who shall take the place of the juror excused and be sworn and examined as other jurors. The other party, if he has peremptory challenges remaining, shall be entitled to challenge any juror then seated on the panel." [Emphasis added.]
 {¶ 26} We disagree with the defendant's contention that by virtue of waiving its third peremptory challenge, the state waived any remaining peremptory challenges. Crim.R. 24 clearly provides that "the failure of a party to exercise a peremptory challenge constitutes a waiver of that
challenge." [Emphasis added]. The rule then states that a waiver of all remaining peremptory challenges does not occur until and unless all parties, alternately and in sequence, fail to exercise a peremptory challenge.
 {¶ 27} In this case, there was no such joint failure in sequence by the state and defense counsel which would have eliminated any remaining peremptory challenges. That is, the defense exercised its fourth and final peremptory challenge; had the defense waived that challenge, a joint waiver would have occurred alternately and in sequence, which would have rendered all remaining peremptory challenges waived.
 {¶ 28} The defendant cites State v. Pryor (1986), Highland App. No. 595 for support. We note that in Pryor, each side was entitled to three peremptory challenges. The state waived its first peremptory challenge, after which the defendant exercised her challenge. The state then waived its second challenge, after which the defendant exercised her second challenge. The state then waived its third peremptory challenge. After the defense exercised its third peremptory challenge, the trial court allowed the state an extra peremptory challenge. The court inPryor found it was reversible error for the trial court to allow an "extra" peremptory challenge. The defendant argues that because the state had effectively waived its final peremptory challenge, the trial court erred in granting an additional challenge, as in Pryor.[1] We disagree. As stated above, the state had not waived any remaining peremptory challenge by virtue of waiving its third challenge. Therefore, since the state had one challenge remaining, the trial court did not err in allowing the state to exercise that challenge. This assignment of error is not well taken.
 {¶ 29} "II. Prosecutorial misconduct in both the cross-examination of Debra Skipper and in the closing argument deprived Debra Skipper of her constitutional right to a fair trial before an impartial jury."
 {¶ 30} In her second assignment of error, the defendant maintains that she was deprived of her right to a fair trial as a result of several instances of prosecutorial misconduct. Specifically, she challenges the prosecutor's cross-examination of her, in which he implied that in order for the jury to believe her, they would have to believe that the several witnesses preceding her were not truthful. She further avers that the prosecutor's remarks in his closing argument were improper and substantially prejudiced her. We disagree with the defendant.
 {¶ 31} The test for prosecutorial misconduct is whether the remarks of the prosecutor were improper and, if so, whether they prejudicially affected a substantial right of the defendant. State v.Smith (1984), 14 Ohio St.3d 13, 14. We note initially that the defendant failed to object to any of the alleged improper questions about which she now complains. Therefore, she has waived all but plain error. State v.Slagle (1992), 65 Ohio St.3d 597. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland (1990), 50 Ohio St.3d 58.
A. Cross-examination
 {¶ 32} The defendant first challenges the prosecutor's implication on cross-examination that she was lying and alleges that questions posed by the prosecutor were prejudicial. Specifically, she challenges the following three questions:
 {¶ 33} "So what you're telling us is that Fred Lutz, Carol Lutz, Mrs. Joachim, Police Officer Dymphna O'Neill and Lieutenant Chura, every one of them has lied and you're telling the truth?" (T. 192)
 {¶ 34} "So your testimony then is that you're testifying truthfully and that every witness that preceded you, everything they said was incorrect even more or less inconsequential things such as * * * you're saying that never happened?" (T. 193)
 {¶ 35} "* * * And you realize though that in order to believe your testimony here today we would have to call each one of these witnesses a liar in almost every aspect of their testimony?" (T.196).
 {¶ 36} Generally, cross-examination is "permitted on all relevant matters and matters affecting credibility." State v. Slagle, supra, at 605, quoting Evid.R. 611(B); State v. Kish, Lorain County App. No. C.A. No. 02CA008146, 2003-Ohio-2426. The scope of cross-examination lies within the sound discretion of the trial court in relation to the particular facts of the case. State v. Slagle, 65 Ohio St.3d at 605, quoting State v. Acre (1983), 6 Ohio St.3d 140, 145. Furthermore, prosecutors are entitled to latitude as to what the evidence has shown and what inferences can reasonably be drawn from the evidence. State v.Smith (1997), 80 Ohio St.3d 89 citing, State v. Lott (1990),51 Ohio St.3d 160, 165; State v. Stephens (1970), 24 Ohio St.2d 76, 82.
 {¶ 37} In a case similar to the instant case, this court stated, "this type of questioning is analogous to that addressed in State v.Garfield (1986), 34 Ohio App.3d 300, 303, where the court stated:
 {¶ 38} `In our system of jurisprudence, wide latitude is allowed on cross-examination of a witness. Cross-examination is invaluable because it is a method of testing the accuracy, truthfulness and credibility of testimony. The limits to which a witness may be cross-examined rests in the sound discretion of the trial judge and this should not be interfered with unless the court abuses its discretion to the prejudice of the party complaining.'" State v. Chaney (Aug. 28, 1997), Cuyahoga App. No. 71274 (it is within the trial court's discretion to allow the prosecution, on cross-examination, to inquire whether another witness is lying).
 {¶ 39} In this case, we cannot say that the prosecutor's questions on cross-examination were improper. The prosecutor questioned the defendant regarding the contradictory testimony of several witnesses who testified earlier in the trial. The questions that the prosecutor posed were asked to impeach the defendant's credibility. Therefore, we disagree with the defendant's contention that the prosecutor's questions on cross-examination were improper.
B. Closing argument
 {¶ 40} Prosecutors are granted wide latitude in closing arguments. State v. Maurer (1984), 15 Ohio St.3d 239, 269, cert. denied (1985), 472 U.S. 1012. In order for a prosecutor's closing argument to be prejudicial, the remarks must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." State v. Williams
(1986), 23 Ohio St.3d 16, 20, cert. denied (1987), 480 U.S. 923. It is the fairness of the trial, not the culpability of the prosecutor which is the touchstone of a due process analysis in cases of alleged prosecutorial misconduct. Smith v. Phillips (1982), 455 U.S. 209.
 {¶ 41} In this case, the prosecutor made three specific remarks regarding the credibility of the defendant during closing arguments, about which the defendant now complains:
 {¶ 42} "* * * That is not believable. It is made up to fit this set of facts. * * *" (T. 214)
 {¶ 43} "* * * She — the defendant has reason to fabricate. She has reason to lie. She has lied in the past. She has been convicted of crimes that involve dishonesty. She was not being honest with you when she testified * * *" (T. 215)
 {¶ 44} "* * * but the only person that had any reason to tell a lie was — was the defendant." (T. 217)
 {¶ 45} It is axiomatic that "while it is improper for the prosecutor to express to the jury his or her personal opinion about the credibility of any witness, the prosecutor is permitted to make a fair comment on the credibility of witnesses based upon their testimony in open court." State v. Mundy (1994), 99 Ohio App.3d 275, citing State v.Price (1979), 60 Ohio St.2d 136, 140. Stated differently, the prosecutor may not state his personal belief that the defendant is lying, but he may suggest that the evidence demonstrates that the defendant is lying. Statev. Draughn (1992), 76 Ohio App.3d 664, 670, 602 N.E.2d 790; State v.Kroger (Apr. 3, 2000), Clermont App. No. CA99-05-050, jurisdictional motion overruled (2000), 90 Ohio St.3d 1402.
 {¶ 46} We conclude that the portion of the prosecutor's remarks in which he advocated that the defendant had a reason to lie was not improper. Accord State v. Kish, Lorain App. No. C.A. No. 02CA008146, 2003-Ohio-2426. However, we find the prosecutor's comments that the defendant was lying to be somewhat troubling. While the prosecutor's statement may be interpreted to mean that "the evidence demonstrates that the defendant is not being honest with you," the prosecutor seemed to express his opinion regarding the credibility of the defendant. However, the effect of the prosecutor's misconduct must be considered in the context of the entire trial. State v. Durr (1991), 58 Ohio St.3d 86, 94;State v. Maurer (1984), 15 Ohio St.3d 239, 266. We note that the trial court admonished the jury not to consider as evidence the opening or closing arguments of counsel. We cannot say that these statements, when considered in light of the whole trial, rise to the level of plain error. We therefore overrule this assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J., and SEAN C. GALLAGHER, J., concur.
[1] Surprisingly, the defendant fails to note that in Pryor, the state's waiver of the first or second peremptory challenge did not automatically render any remaining peremptory challenges waived.